# APRIL TERM, 1886.

## Lucy W. S. Morgan v. Anna L. Meuth and Adam A. Meuth.

*Mortgage—Right of way—Modification of description of, by decree of Supreme Court on foreclosure—Cannot be made where the bill of complaint fails to ask for such reformation, and the decree appealed from follows the mortgage description—Commissioner's deed on a sale under such modified decree, cannot increase the rights originally granted by the mortgage—Nor can the owner of the equity of redemption, subject to such mortgage, stipulate for a decree changing such original grant—Easements—Extinguished by unification of title to dominant and servient tenements—Discontinuous and continuous, defined—Conveyance of dominant estate will not pass a discontinuous easement, under general words, "together with the hereditaments," etc.,—Grantor must use language sufficient to create such easement de novo—Or its use must be necessary to the enjoyment of the premises conveyed—Way of necessity defined.*

1. A mortgage conveying, in connection with the premises therein granted, a right of way "over and along such alley or passage way as *may be* provided for that purpose," was foreclosed in equity, no reformation of the description being asked for in the bill of complaint, which was taken as confessed by the heirs of the mortgagor, and a decree granted following the mortgage description. The owner of the equity of redemption subject to such mortgage, was made a party defendant, and *alone* appealed to the Supreme Court, where she stipulated with the appellee for a decree modifying that of the lower court by changing the original grant so as to cover "such alley or passageway as [*is or*] may be provided for," etc. A sale was had under this modified decree, at which the owner of such equity of redemption became the purchaser, and the commissioner's deed executed thereon assumed to still more specifically describe, as an *existing* alley, the passage way referred to in said mortgage.

   *Held,* in a suit brought by such purchaser to establish her right to the alley described in the commissioner's deed, that the appellate court had no power to thus change said description, and that grantees claiming under the heirs or administrator of the mortgagor other land affected by such alteration, were not bound thereby.

*Held*, further, that the parties to said stipulation had no power to stipulate away the rights of the heirs or legal representatives of such mortgagor, or alter the grant contained in his mortgage, so as to secure any greater rights than he conveyed in said mortgage; and that the commissioner's deed was equally powerless to alter said grant.

2. The owner of land entitled to the enjoyment, as appurtenant thereto, of an alley, *solely for a passage way*, purchased the land burdened with such easement.

*Held*, that by the unification of the title of the dominant and servient tenements, the easement was merged and extinguished.

*Held*, further, that a subsequent conveyance of the dominant tenement would not carry with it such discontinuous easement, by the use of the general words, "together with the hereditaments and appurtenances thereunto belonging."

*Held*, further, that while continuous easements pass on the severance of the two tenements, as appurtenances, a right of way does not, unless the grantor uses language sufficient to *create* such easement de novo, or because its use is *absolutely necessary* to the enjoyment of the premises conveyed.

3. The use of an alley or right of way cannot be claimed by the owner of the adjoining land as a way of necessity, when he can reach his premises by a passage way over his own lands; and such alley, or right of way, is not necessary to the free or full enjoyment of his property.

4. On examining the testimony in this case, no warrant is found for the complainant's claim of a natural passage way or easement for the flowage of surface water from her lands into and through the alley in dispute, as through a drain.

Appeal from Washtenaw. (Joslin, J.) Argued January 6, 1886. Decided April 8, 1886.

Complainant appeals. Affirmed. The facts are stated in the opinion.

*Noah W. Cheever*, for complainant:

Complainant claims the right to use this alley, through the provisions of the Caroline Buchoz mortgage. This mortgage was foreclosed, and the south eight feet of the mortgaged premises, and the right of way to the barn, were sold and conveyed to complainant. The evidence shows that the alley in question was the way provided by Buchoz, under the provisions of this mortgage. A deed is to be construed in

the light of all of the surrounding circumstances. A right of way of an alley, included in a deed, implies *ex vi termini* a passage leading away from the land conveyed: *McConnell v. Rathbun*, 46 Mich. 303.

The complainant's land is the dominant, and the defendant's, the servient tenement; and where the titles are both derived from the same person, and the owner of the dominant tenement has acquired his title before the owner of the servient tenement, the following propositions seem to be established by the decisions:

Where the owner of two or more tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold, with all the benefits which appear at the time of the sale to belong to it, as between it and the property which the vendor retains: *Outerbridge v. Phelps*, 58 How. Pr. 93; *Kieffer v. Imhoff*, 26 Penn. St. 438; *McCarty v. Kitchenman*, 47 Penn. St. 239; *Phillips v. Phillips*, 48 Penn. St. 186; *Penn. R. R. Co. v. Jones*, 50 Penn. St. 417; *Overdeer v. Updegraff*, 69 Penn. St. 111; *Cannon v. Boyd*, 73 Penn. St. 179; *Thompson v. Miner*, 30 Iowa, 386; *Glave v. Harding*, 3 Hurlstone & Norman, 944, and 27 L. J. Exchr. 286; Goddard on Easements, 117 note h, and page 123; *Janes v. Jenkins*, 34 Md. 2; *Simmons v. Cloonan*, 81 N. Y. 557, 566; *Cave v. Crafts*, 53 Cal. 135; *Harwood v. Benton*, 32 Vt. 733; *Goodall v. Godfrey*, 53 Vt. 219; *Watts v. Kelson*, 6 Chan. App. Cases (L. R.) Eng. 165; *Huttemeier v. Albro*, 2 Bosw. 546; *Langley v. Hammond*, 3 Exchr. (L. R.) 169, opinion by Bramwell, B.

In some cases the above doctrine is confined to continuous easements which are apparent, such as open water courses, which are usually denominated continuous easements, and roadways, discontinuous or non-continuous easements: Washburn on E. and S. page 17.

In this case the alley was well defined, being bounded on the south by the Buchoz block, and on the north by a fence, and was planked as far back as the building extended, and has been constantly open and used for more than thirty years. This alley was a well-defined and thoroughly wrought way, plainly apparent to every one; and such roadways are held to be continuous easements, or are governed by the same rules as continuous easements: *Watts v. Kelson*, 6 Chan. App. Cases (L. R.) 165, and 173 foot of page; *Langley v. Hammond*, 3 Exchr. (L. R.) 169, opinion by Bramwell, B.; *Glave v. Harding*, 3 Hurlstone & Norman, 944; *Kieffer v. Imhoff*,

26 Penn. St. 438; *McCarty v. Kitchenman*, 47 Penn. St. 239; *Phillips v. Phillips*, 48 Penn. St. 178; *Penn. R. R. Co. v. Jones*, 50 Penn. St. 417; *Overdeer v. Updegraff*, 69 Penn. St. 111; *Cannon v. Boyd*, 73 Penn. St. 179; *Thompson v. Miner*, 30 Ia. 386, 390; Goddard on E. p. 117, note h, and p. 123, note 4; Washburn on E. and S. pp. 46, 49, 55, 57, 59, 71–76, 81, 83, 88, 234, 614, 615, 617, 619, 620, 621.

Where a person owns a dominant and servient tenement, and conveys the former, describing the property, not by metes and bounds, but generally or in gross, as, white acre, black acre, a messuage, a mill, a dwelling house, a brick block, etc., —all apparent *quasi* easements or privileges and conveniences belonging to and used with such dominant tenement pass to the grantee, as a part of such tenement, as between it and the servient tenement retained by the grantor: Goddard on Easements, p. 120–1; *Comstock v. Johnson*, 46 N. Y. 615; *Vorhies v. Burchard*, 55 N. Y. 98; *Doyle v. Lord*, 64 N. Y. 432; *Parsons v. Johnson*, 68 N. Y. 67, 68; *Warren v. Blake*, 54 Me. 286, 288; *Grant v. Chase*, 17 Mass. 446; *Carbrey v. Willis*, 7 Allen, 369, 370; *Riddle v. Littlefield*, 53 N. H. 503; *Blaine's Lessee v. Chambers*, 1 Serg. and R. (Pa.) 169; *Whitney v. Olney*, 3 Mason, (U. S.) 280; *U. S. v. Appleton*, 1 Sumner, (U. S.) 492; *Press v. Parker*, 2 Bing. (Eng.) 456; Washburn on E. and S. pages 39, 43; *Kent v. Waite*, 10 Pick. 138.

An easement whereby water collecting upon land must be allowed to find an outlet, even though it overflows adjacent land, may be acquired by prescription: *Conklin v. Boyd*, 46 Mich. 56; and damages may be recovered by the injured party for willful obstruction of a private way: *Bagley v. People*, 43 Mich. 355.

*Sawyer & Knowlton*, for defendants:

An easement is an incorporeal hereditament: 1 Bov. Inst. § 1601, and is always created by grant, either actually existing, or presumed to exist: Wash. R. Prop. Vol. 3, 52, 301; Angell on W. C. §§ 168, 261, page 352; and such grant may be presumed from an adverse user of twenty years, the evidence of which is lost: Angell on W. C. §§ 201–3–4, note 2; *Hillary v. Waller*, 12 Ves. 239; *Coolidge v. Learned*, 8 Pick. 508; *Edson v. Munsell*, 10 Allen, 568; *Tracy v. Atherton*, 36 Vt. 503.

With respect to their use, easements are designated as continuous and discontinuous, the enjoyment of the first being

continual without the necessity of an actual interference by man, and the enjoyment of the latter depending upon such interference, as rights of way, etc.: Angell on W. C. § 195; *Jamaica, etc. v. Chandler*, 9 Allen, 164; *Lampman v. Milks*, 21 N. Y. 505.

The right of way claimed by complainant is a discontinuous easement, and exists, if at all, by prescription, express grant, necessity, or as appurtenant to her estate. Prescription is defined as a title acquired by use and time to incorporeal hereditaments, such as of right of way, or of common: 2 Burrill Dict. 327; but such use and occupation must be adverse: 1 Bov. Inst. § 2197. If such easement ever existed, it merged in Buchoz, and became extinct when he became the owner of both the dominant and servient estates: Angell on W. C. § 195, pp. 355–6; Washb. Eas. 517, 522 or 643; Washb. Real Prop., 277; and after that, there could be no adverse use: Washb. Eas. 119; *Holland v. Long*, 7 Gray, 486; *Brakel v. Sharp*, 9 N. J. Eq. 9; *Stanford v. Lyon*, 7 C. E. Green, 33; and a severance of the titles would not revive such easement, without the use of words in the subsequent grant clearly indicating a purpose to do so: *Worthington v. Gimson*, 2 Ellis & Ellis, 618; *Fetters v. Humphreys*, 3 C. E. Green, 18 N. J. Eq. 260; Washb. Eas. 53–9; *Thomson v. Waterlow*, L. R. 6 Eq. Cas. 36; *Langley v. Hammond*, L. R. 3 Exchr. 161; *James v. Plant*, 4 A. & E. 749.

The American rule seems to be, that upon unity of possession all easements are absolutely extinguished; and upon severance of the estate nothing revives, unless by the express language of the grant; and that even ways of necessity may as well be construed to spring from the new as from the old grant: Angell on W. C. § 195; *Ritger v. Parker*, 8 Cush. 147.

If this easement exists by express grant, it must be found in the mortgage executed to Caroline Buchoz; but this instrument does not create the right of way claimed, for it refers to a right of way over such alley as *may be* provided for the purpose. If the intent of the grant had been to convey the passage way claimed, it would have been shown by reference to an alley *then in use*, or one otherwise *defined*, or *all* ways heretofore or *now* in use: *Watts v. Kelson*, 6 Chan. Appeal Cas. L. R. 166; *Plant v. James*, 5 Barn. & Adol. 791; *Thomson v. Waterlow*, L. R. 6 Eq. Cas. 36; *Staple v. Heydon*, 6 Mod. 1; Washb. Eas. 239. Easements by *express* grant are such as "are spoken into being by the very words of the grant." The language used in this mortgage is a mere

reference to an *intended* way, without any express grant: Washb. Eas. p. 239 ; *Harding v. Wilson*, 2 Barn. & C. 96 ; *Roberts v. Karr*, 1 Taunt. 495 ; *Hopkinson v. McKnight*, 31 N. J. 427.

Complainant cannot claim the easement as a way of necessity, for she can reach any portion of her land from the public highway over her own land, and the law will not provide such a way over the grantors lands unless there be no other way to the lands conveyed : *Nichols v. Luce*, 24 Pick. 102 ; 1 Cooley Black. B. 2, 35 note ; Washb. Eas. chap. 2 § L. ; 1 Bov. Inst. § 1639 ; and it is not a question of convenience of ways ; *Trask v. Patterson*, 29 Me. 499 ; *Allen v. Kincaid*, 11 Me. 155 ; *Scott v. Palms*, 49 Mich. 505 ; *Turnbull v. Rivers*, 3 McCord, 131 ; *Brigham v. Smith*, 4 Gray, 297 ; and a way by necessity is limited by the necessity creating it, and ceases when the grantee obtains lands over which he may pass to the dominant estate : *Collins v. Prentice*, 15 Conn. 39 ; *Pierce v. Selleck*, 18 Conn. 321 ; *Abbott v. Stewartstown*, 47 N. H. 228 ; *Scott v. Palms*, 48 Mich. 505. Ways by necessity, like continuous easements, will pass by implication of law, without any words of grant ; and they are the only easements that do pass, unless the owner, by appropriate language, shows an intention that they should pass : *Polden v. Bastard*, Law Rep. 1 Q. B. 156, 161 ; *Watts v. Kelson*, 6 Chan. App. Cases, 165, 173 ; *Fetters v. Humphreys*, 3 C. E. Green, (N. J.) 260.

The easement claimed was not acquired by complainant, as an appurtenance, which signifies something appertaining to another thing as principal, and passes as incident to the principal thing, and which is of a different nature : *Harris v. Elliott*, 10 Pet. 25 ; *U. S. v. Harris*, 1 Sum. 37 ; *N. Ips. Fac. v. Batchelder*, 3 N. H. 190. Such easements must exist, and be attached to the estate granted, at date of grant ; and it is clear that under the word " appurtenance," according to its legal sense, an easement that does not exist in point of law, by reason of unity of ownership, does not pass : *Plant v. James*, 5 Barn. & Adol. 791 ; *Whalley v. Thompson*, 1 B & P. 371–6 ; *Grant v. Case*, 17 Mass. 443 ; Washb. Eas. p. 51. The reasons assigned by the courts and text writers why the word " appurtenances " does not operate to convey an easement, in cases like the one at bar, are :

1. No man can acquire an easement as against himself : Washb. Eas. pp. 51–2 ; *Barlow v. Rhodes*, 1 Crompt. & M. 439 ; *Plimpton v. Converse*, 42 Vt. 712.

2. The unification of two classes in one person extinguishes

all subordinate rights and easements : *Whalley v. Thompson*, 1 B. & P. 375 ; Angell on W. C. 346 ; 1 Bov. Inst. § 1601 ; *Langley v. Hammond*, L. R. 3 Exchr. 161–6–7.

3. The word can operate only on *existing* easements : Washb. Eas. 51 ; Washb. Real Prop. Vol. 3, 627 ; *Plant v. James*, 5 B. & A. 791.

Complainant claims an easement as a natural water course over the lands of the defendant, for the flow of the surface water that falls and collects on her lands ; but the facts disclosed by the testimony do not amount to a natural water course, which " is a natural stream flowing in a defined bed or channel, with banks and sides, having permanent sources of supply " : *Barkley v. Wilcox*, 86 N. Y. 143. There is great confusion among the courts of the several states, with respect to the rights of the adjoining owners in the flow of surface water. Some follow what they are pleased to term the civil law, and hold that the upper has a natural easement in the flow of surface water upon the lower estate : *Livingston v. McDonald*, 21 Iowa, 160 ; *Gillham v. Madison Co. R. R. Co.*, 49 Ill. 484 ; *Butler v. Peck*, 16 Ohio St. 334.

Others claim to follow what they are pleased to term the common law maxim, that the owner of the fee owns all above and below the surface ; and therefore hold the man harmless who builds a dam and stops out the flow of surface water : 1 Bov. Inst. § 1608 ; *Chatfield v. Wilson*, 28 Vt. 49 ; *Dickinson v. City of Worcester*, 7 Allen, 19 ; *Greeley v. Maine C. R. R. Co.*, 53 Me. 200 ; *Bowlsby v. Speer*, 31 N. J. L. 351 ; *Sweet v. Cutts*, 50 N. H. 439 ; *Morrison v. B. & B. R. C.*, 67 Me. 353 ; *Parks v. Newburyport*, 10 Gray, 28 ; *Wheatley v. Baugh*, 25 Penn. St. 528 ; *Barkley v. Wilcox*, 86 N. Y. 140.

But in those states in which it is claimed that the civil law is followed, a clear distinction is made between rural and urban property, and it is held that the rule which forbids stoppage of the flow of surface water in its natural channels does not apply to urban property : Washb. Eas. p. 463–4 ; Angell Water Courses, 136; *Bentz v. Armstrong*, 8 Watts & S. (Penn.) 40 ; *Bowlsby v. Speer*, 31 N. J. Law, 351 ; while these courts that follow what they are pleased to call the common law maxim, of course hold that there is no difference, and that everybody has the right to dam against surface water.

We submit, therefore, that in either case, this being urban property, we have the legal right to dam against the flow of the surface water, unless it appears from the evidence that

complainant has the right she claims by express grant, necessity, or prescription.

It certainly will not be claimed that the right is found in any express grant, or that it is an easement by necessity, for, as we have already shown, the complainant not only can take, but when the block was built it was agreed that the surface water *should be taken* to the south of the block.

It remains to consider whether the complainant has any easement by prescription. In this, as in case of ways by prescription, unity of possession extinguishes the easement: Angell on Water Courses, § 191 ; and the doctrine that a man can have no easement against himself, also applies: Id. § 166a. Had Buchoz in his lifetime and during his ownership cut a ditch from one parcel to the other, or laid a drain across the one for the benefit of the other, or placed a water pipe from one to the other for the supply of water, and in that condition had conveyed the separate parcels, the case would be brought within the law of continuous and apparent easements, and the easement might have passed.

But there can be no continuous and apparent easement except it be first created. A continuous easement is created for the very purpose to which it is applied, and when once put in operation it may be enjoyed continuously without the aid of man.

An easement is and must be based upon some act of hostility, and the defendant must at some time have been in a position to have maintained suit against the claimant for the act which has ripened into an easement by the flow of time and user, before an easement is gained by prescription. Nothing of the kind appears in this case: *Swett v. Cutts*, 11 Law Reg. N. S. 11, 17, 18 ; *Conklin v. Boyd*, 46 Mich. 60, 61 ; but the word "appurtenance" can only operate to pass such easements *as are in existence, and attached to the estate when granted.*

Certainly no easement has been acquired by prescription, none arises from the grant, and none is required by necessity ; and therefore none passed.

Morse, J. The bill of complaint in this case was filed to establish complainant's right to an alley in the property known as the "Buchoz Block," in Ann Arbor.

The Buchoz block consists of four stores fronting nearly west on Detroit street. The alley in question is about twelve feet wide, and is immediately north and adjoining the block,

and extends east to the rear end of the lot upon which the block is built.

The Buchoz block is located on the Kenneth-Davidson plat of subdivision of lot 3, in block No. 3, north of Huron street, in range 6 east, in Ann Arbor. The lots in this block are eight by twelve rods. The Bent house property is located immediately south and adjoining the block. The Meuth lot is located immediately north and adjoining the block.

Between the Bent property and the Buchoz block is a strip of land ten feet wide, reaching the whole distance from Detroit street to the east end of the original lot. North of this strip, and adjoining it, is an alley platted three feet wide. This alley was platted for the use and benefit of the lots composing the Buchoz block, and for no other purpose.

From April, 1860, until his death, in October, 1874, Louis R. Buchoz owned, in fee simple, the Buchoz block, the Bent property, and the land now owned and occupied by the defendant, Meuth.

In March, 1865, Louis R. Buchoz executed a mortgage upon the Bent property to his divorced wife, Caroline Buchoz, " with the privilege of a right of way, and of passing and repassing from Detroit street to the east end of said land, over and along such alley or passage-way as may be provided for that purpose, by closing immediately after passing, and keeping closed, such gates as may be placed in it, and not obstructing the alley."

On the second day of January, 1868, Buchoz gave the complainant a mortgage covering the land described in the mortgage to his wife, except the north eight feet of lot 2, and in addition thereto, embracing the Buchoz block, and the strip between said block and the Bent property, and two rods not contained in the mortgage to Caroline, being the east two rods in width from off the Bent property. No right of way was granted, in terms, by this mortgage.

Complainant, at the time of filing her bill, owned the property covered by these two mortgages, having acquired the same by foreclosure.

The defendant owns the land lying north and adjoining

the Buchoz block, by Buchoz's administrator's deed to A. J. Sawyer, April 19, 1882, and by conveyance from Sawyer to Alfred Buchoz, and from Alfred Buchoz to Anna L. Meuth, both of same date as deed to Sawyer. The description of the premises conveyed by these deeds is bounded upon the south by the north line of Davidson's plat, and thereby including the land claimed as an alley by complainant.

The complainant does not claim a way of necessity. She puts her right to the use of this alleged alley upon the provision above quoted in the mortgage executed by Louis R. Buchoz to his wife, Caroline.

The defendants claim that the alley or passage-way referred to in said mortgage is the ten-foot strip between the Bent property and the Buchoz block.

A careful study of the record, and scrutiny of the maps, deeds, and mortgages accompanying it, satisfy us that the defendants' claim is the correct one.

It is necessary to examine into the origin, location, and use of the alley in which the complainant asserts rights under the mortgage to Caroline Buchoz, to determine whether the reference therein is to this alley or to another way. In the first place, the alley in question was never platted, as appears from the records in the office of the register of deeds of Washtenaw county. The first plat we know of embracing the land forming this alley was one dividing block 3 into lots, the lots concerned in this litigation being numbered from the south to the north as 2, 3, 4; the Bent property being on the south third of lot 3, with eight feet from off the north end of lot 2; the Buchoz block and the Meuth property being on lot 3. Then Kenneth Davidson subdivided the portion of lot 3 known in this controversy as the " Buchoz Block," into lots;—1, 2, 3, 4, and 9 fronting on Detroit street, running, from the north, southwesterly, in the order named. Back of lot 1, and running the whole southeasterly and easterly length of lot 3 of the block, was lot 5; and back of lot 2 of the subdivision was lot 6; and back of lot 3 was lot 7; and back of lot 4 was lot 8. Along the southerly line of lots 9, 4, 8, 7 and 6, he platted an alley

about three feet wide. The north line of lots 1 and 5 was the south line of what is now claimed to be the alley in question here.

March 1, 1850, Davidson deeded to Charles T. Wilmot lots 1 and 5 of his subdivision, in which deed no mention is made of any alley or passage-way on the north side of said lots; but Wilmot is granted therein "the right or privilege of passing and repassing with wagons, teams, or otherwise, from Detroit street along the alley on the south side of subdivisions Nos. 6, 7, 8, and 9, to said subdivision No. 5, and back, until said Wilmot, his heirs or assigns, can or shall obtain a right of way to said subdivision No. 5, north of said subdivision No. 1; but this right of using said alley is to cease and determine whenever such other right of way shall have been obtained."

In order to use the privilege thus granted, Wilmot must, of necessity, have used the strip of land between the Buchoz block and the Bent property, which is claimed by defendants to be the passage-way granted in the Caroline Buchoz mortgage.

Wilmot never acquired any right of way north of subdivisions 1 and 5 ; and June 18, 1851, deeded said subdivisions, with other lands, to Louis R. Buchoz, who at that time owned the Meuth property and other lands north of said subdivisions.

The alley in controversy here was first created by Louis R. Buchoz in a deed to Enoch Terhune, dated October 22, 1851, conveying lands north of and adjoining Davidson's subdivision, in which he reserved and excepted from said deed the "equal undivided half of the most southerly twelve feet in width of the land above conveyed, which strip of land twelve feet wide is to extend from Detroit street to the east line of said lot 3, along, and adjoining on the north, the north line of said subdivisions 1 and 5 ; *and to be kept open and free from obstructions, and used by the parties to these presents, their heirs and assigns, in common, for an alley.*" It will be noticed that this reservation of this twelve feet for an alley was not a public one, and there is no claim anywhere of any dedication to the public of this alley. It simply was

to remain an alley as between the parties to this deed and their heirs and assigns.

Terhune gave a mortgage back, upon the premises so deeded to him, to Buchoz; and by the foreclosure of the same, April 28, 1860, Buchoz became again the owner thereof; thus placing the title to the ground covered by this alley in Buchoz alone, no other person having any rights therein.

Buchoz acquired the Bent property June 2, 1851, and the balance of Davidson's subdivision not deeded to Wilmot, December 14, 1850; and from 1860 to his death, in 1874, he was the owner of the Bent property, the Buchoz block, the strip between the Bent property and the Buchoz block, this alley in dispute in this case, and the Meuth lands.

During this ownership, and the occupancy and use of these premises by Buchoz and his tenants, the testimony shows that this alley was used by Buchoz and his tenants, and sometimes by the public with the consent and permission of Buchoz; but no adverse user is shown by any one.

The question now arises, what passage-way did he refer to in his mortgage to his divorced wife of date March 31, 1865? The use for which this passage-way was designed unquestionably was for the benefit of the buildings then standing upon the Bent property, which were a house and brick barn. The house was near the northern line of said property, and a little to the west of the center of the premises. The barn was nearly to the eastern end of the property, and in the southeast corner of the same. The right of way was granted from Detroit street to the east end of said land, along "such alley or passage-way *as may be* provided for that purpose."

The natural reading of the grant would indicate that this passage-way would run directly, the shortest way, from Detroit street east to the east end of the lot, which would be the ten-foot strip claimed by defendants. This would be, with the alley platted on the subdivision, about thirteen feet wide, until the line of lot 5 was reached, upon which there were no buildings or anything else to prevent passage of wagons. It seems absurd to claim that the alley meant was

to commence on the north line of subdivision 1, and run along the north line of that and subdivision 5, and then go south across the latter subdivision to this barn, when a much shorter cut would go from Detroit street directly east to it.

The language of the grant also supports defendants' claim. The alley in controversy was in use then by Buchoz and his tenants, and had been since its creation, fourteen years before. Why was not this alley, the width and length of which had already been determined by the Terhune deed, and the use under it, particularly mentioned and described, or reference made to it, in this mortgage?

The mortgage does not call for an alley or passage-way already in existence and in use, but one "as may be provided for that purpose."

It appears clear to me that no right of way in this alley was granted, or intended to be granted, in the mortgage to Caroline Buchoz.

But it is claimed that by a reformation of the decree in the suit to foreclose this mortgage in the Supreme Court, the grant was extended and enlarged so as to cover this alley by the addition of the words "is or," so that the clause now reads: "Such alley or passage-way as [*is or*] may be provided," etc.

In my opinion, this action of the Supreme Court cannot alter the rights of the parties to this controversy, nor add to the scope of the grant in the original mortgage. In the first place, no reformation of the description of this alley or of the premises was asked in the bill of complaint of Caroline Buchoz. She filed a simple foreclosure bill, making the complainant here, Mrs. Morgan, a defendant, as a subsequent purchaser or incumbrancer; and it was taken as confessed by the heirs of Louis R. Buchoz, who had no notice of any intended change in the words of the grant of a passage-way.

The decree in the circuit followed the mortgage in its description. No amendment was made to the bill. Therefore the defendants, who claim under the heirs of Buchoz, or his administrator, could not be concluded by a change of this

kind made under these circumstances. · No court had any power to do it.

*Secondly*, the decree, as modified, reformed, and enlarged in the Supreme Court, was altered, as it appears from the record, by stipulation entered into by Mrs. Morgan and Mrs. Buchoz, through their respective attorneys. These parties had no power to stipulate away the rights of Buchoz's heirs or legal representatives, or to enlarge or alter the grant contained in the mortgage, so as to confer upon either Mrs. Buchoz or Mrs. Morgan any greater rights, as against Buchoz. and his heirs, than he conveyed in the instrument originally.

Not satisfied with trying to gain a use of this alley by this stipulation in the Supreme Court, to make the right doubly sure, the commissioner's deed upon a sale under this decree goes further than the decree, and grants to Mrs. Morgan this right of passage-way specifically to this barn, which building was not referred to in connection with this right of way in. the mortgage, or either the decree of the circuit or supreme courts. This deed, however, cannot alter the grant in the mortgage, although it would seem to have been drawn with such intention. The complainant's rights must rest, as far as this grant in the mortgage is concerned, upon its terms. as executed by Louis R. Buchoz, and under it she took no interest or right in this alley. ·

The complainant's counsel insists further, however, that such was the condition of this whole property at the time of Buchoz's mortgage to .her, by which she has acquired the Buchoz block, that the remaining estate of Buchoz became servient to her estate, which was. the dominant tenement ; that she is entitled to the use of the alley, which was a benefit to the Buchoz block, and apparent at the time her mortgage was given. In other words, the alley was in existence and in use when her mortgage was executed, and was of benefit or advantage to the buildings, or some of them, composing the block ; and therefore, having acquired the title to said block, under said mortgage, she is entitled to such benefit and advantage permanently, as a privilege and appurtenance to her property thus acquired. The complainant's

counsel has ably and forcibly presented her case in this respect; but we are unable to agree with him in his reasoning, or in his application of the law to the undisputed facts in this case.

There is no doubt but by the deed from Buchoz to Terhune the land now known as the "Meuth property," and owned by the defendants, was made servient to the Buchoz block, and burdened with an easement, created by the exception and reservation in said deed, for the benefit and advantage of the block, then owned by Buchoz, in the alley, the use of which was reserved in the deed. But it is equally certain, from the authorities, that when the title of both premises was united, in 1860, in Buchoz, the easement was merged and extinguished. Buchoz then owned the whole property, and he could not have an easement in his own land, or appurtenant to his own land. After such merger, it was a way of his own, for his own convenience, which he might alter or close up at his own pleasure. The dominant and servient tenements were unified; and the question arises whether, by the conveyance to complainant and consequent severance of the ownership of the dominant tenement, this alley, or right of way, passed by the general words, "together with the hereditaments and appurtenances thereunto belonging, or in anywise appertaining." This depends upon the nature of the easement. This alley was created for a passageway, and nothing else. The only benefit or advantage claimed for it is that of a right of way. It is therefore a discontinuous easement;—one the use of which can only be had by the interference of man. It is not like a drain or sewer, which are used continually without the intervention of man. Continuous easements pass, on the severance of the two tenements, as appurtenances, but a right of way does not, unless the grantor in the conveyance uses language sufficient to create the easement *de novo*, or because its use is absolutely necessary to the enjoyment of the premises conveyed. All the authorities cited by the counsel for complainant are cases of continuous easements, or discontinuous

easements without which the premises could not be used for the purposes granted. They do not apply here.

It is admitted that complainant cannot claim the use of this alley as a way by necessity. She can reach the rear of her buildings in the Buchoz block, and all her property, from Detroit street, by a passage-way over her own lands. This alley would be convenient for her, but it is not necessary. From the testimony, it plainly appears that its continuance, for the last few years before the defendants closed it, was a nuisance, not alone to the defendants, but to all decent people in the neighborhood, because of the character and habits of the people who resorted to and used it at night. There is no good purpose to be served by re-opening it, nor is it necessary to the free or full enjoyment of complainant's property. And plainly, under the authorities, she cannot claim it as a matter of right. The use of it to her did not pass by the general words above quoted in her mortgage: *Simmons v. Cloonan*, 81 N. Y. 566; *Lampman v. Milks*, 21 N. Y. 516; *Parsons v. Johnson*, 68 N. Y. 62; *Grant v. Chase*, 17 Mass. 443; *Whalley v. Tompson*, 1 Bos. & P. 371– 376; *Scott v. Palms*, 48 Mich. 505; *Fetters v. Humphreys*, 19 N. J. Eq. 471; Washb. Easem. (3d Ed.) 650, 652.

The complainant also avers in her bill that the inclination or surface of her premises is such that the surface water therefrom necessarily runs into said alley, and must and should be allowed to pass freely around the easterly corner of the Buchoz block into said alley; and claims a natural passage-way or easement for such surface water to flow from her lands into and through said alley, as through a drain.

We find no warrant in the evidence for this claim. The testimony shows that before the building of the Buchoz block the surface water naturally ran from the east to the west, crossing Detroit street about midway of the block; and at the time of the building of the block an arrangement was made between the owners of these lands that the water was to be taken to the south end of the Buchoz block, and run off through the alley platted by Davidson. The water did not naturally run into this alley. The complainant has no right

to the use of it as a drain by express grant. Nor has she any right by prescription. It is true that since the block has been built, by the changing of the surface of the ground, the water has run off more or less through this alley. But the complainant has not owned the property long enough to gain a prescriptive right. There could be no easement for the flow of this water into this alley from 1860 to the date of her foreclosure of this mortgage, while Buchoz or his heirs owned both the block and the alley. Buchoz, while such owner, had the right to run the water off from his premises wherever he saw fit, as long as he did not injure his neighbors thereby. He could have, however, no easement against himself, as heretofore shown : Washb. Easem. (3d Ed.) 640 ; Ang. Water Courses, § 191.

No drain or ditch, or any other way, has ever been laid or built into or through this alley for the benefit of the Buchoz block, and the fact that during Buchoz's ownership the water was permitted to flow over the surface of the ground without any artificial channel, into the alley, and through it, cannot be made the basis of any prescriptive right in one who was then a stranger to the premises. The complainant's rights by user could not commence until she acquired title to the block, and enjoyed this way for the water adversely. At the time her mortgage was executed, the title of both parcels being in Buchoz, no easement existed ; and she therefore did not acquire it as an appurtenance. Nor is it shown that she is entitled to this flowage of water by necessity.

The decree of the court below must be affirmed, with costs of both courts.

The other Justices concurred.

NOTE.—A plat of the premises, furnished with the defendants' brief, will be found opposite page 247.—REPORTER.