## MURPHY CHAIR CO. v. AMERICAN RADIATOR CO.

1. JUDGMENTS—CONCLUSIVENESS—EQUITY—RES JUDICATA.

　　A judgment is not *res judicata* in a subsequent cause, unless the identical matter in issue in the second proceeding was determined by the former adjudication.

2. SAME.

　　The decree in the case of *Stansell* v. *American Radiator Co.*, 163 Mich. 528 (128 N. W. 789), determining the rights of complainant under a tax lease purchased in the name of a trustee for the purpose of cutting off any rights of easement held by the defendant radiator company in the 30-foot strip of land involved in this proceeding, is not *res judicata* of complainant's suit brought in its own name to determine the respective rights of the parties to the same parcel under separate grants of easement. But what the court said in the first case as to the effect of a certain deed from complainant to defendant, wherein the easement of defendant was recognized, and determining its effect, is conclusive in the second proceeding.

3. EASEMENTS—CONFLICTING RIGHTS.

　　Where complainant held the original easement by mesne conveyances from the first grantee, and defendant having secured by purchase an easement from the grantor, constructed on the parcel side tracks to an adjacent railroad, its use was subject to the paramount right of way over the same premises claimed by complainant, who had openly used the strip in question as a roadway for 14 years or more.

4. SAME—NOTICE.

The purchaser of an estate which is charged with an easement that may be discovered upon examination, such as an open and visible roadway, takes his title subject to such easement, to the extent his grantor is bound thereby.[1]

5. SAME—GRANTS OF CONFLICTING RIGHTS—CONSTRUCTION.

A subsequent grant of an easement, which tends to affect or impair a right of way previously granted over the same parcel, must be subordinate to the senior grant; so that the second grantee cannot so use the premises as to interfere with the existing easement, and cannot obstruct at any time the free passage of the holder of the senior grant.

6. SAME—NONUSER.

Defendant's claim, obtained by grant, was not lost by nonuser.[2]

7. SAME—MERGER.

Purchase by a trustee for the benefit of complainant of the fee, subject to existing easements, did not merge the legal title of the distinct estates, so as to destroy complainant's easement.

8. SAME—EQUITY—DECREE.

A decree should be so framed as to permit the reasonable exercise of the rights of complainant and defendant, the former to be given the superior and permanent right of way over the 30-foot strip; neither party to be permitted to harass or annoy the other, the defendant by storing cars on the track built across the parcel, or complainant by blocking the way of defendant over its tracks.

Appeal from Wayne; Mandell, J.   Submitted June 12, 1912.   (Docket No. 35.)   Decided October 1, 1912.

Bill by the Murphy Chair Company and James F. Murphy, trustee, against the American Radiator Company and the Wabash Railroad Company for an injunction and a construction of certain conflicting grants of easement.   From the decree complainants appeal.   Modified and affirmed.

---

[1] For physical conditions which will charge purchaser of servient estate with notice of easement, see note in 8 L. R. A. (N. S.) 418.

[2] As to abandonment or loss of private way by nonuser, see note in 22 L. R. A. (N. S.) 880.

*Orla B. Taylor* and *Charles F. Delbridge,* for complainants.

*Bernard B. Selling, Charles H. Ripley,* and *George H. Simpson,* for defendant.

STONE, J.   This case involves the nature and extent of certain easements and their relation to one another.   The facts in the case are somewhat extended and involved, but not intricate, when fully understood.   By their bill of complaint, the complainants seek to have declared null and void a certain right of way for railroad track, or easement, claimed by the defendant American Radiator Company to exist from its certain tract of land shown on Exhibit A, being a plat attached opposite page 32 of the record, west to the right of way of the Wabash Railroad Company.   We shall refer to Exhibit A, and incorporate the same in this opinion.

The bill avers that it is unjust and inequitable to permit a construction and maintenance of such track; that

if it should be found that the American Radiator Company has the legal right to lay and maintain such track, that the court should construe such grant or right of way, and decree the nature, extent, and limits of the defendants' right to the use of the same, and the rights of the complainants with reference thereto. It prays that the defendants be enjoined from laying, maintaining, and operating a side track upon and across the property of complainants; or, if found that they have a right to lay, maintain, and operate the same, that the said defendants be perpetually enjoined from laying, maintaining, and operating such side track except within the limits defined by the court.

In 1882 George V. N. Lothrop was the owner of the entire parcel of land embraced in this plat, designated thereon as W, A, M, N, V. Prior to conveying away said land, no easements existed as to any of the property. It had a frontage on Russell street, Trombley avenue (then known as Campau road), the Detroit, Grand Haven & Milwaukee Railroad on the east, and the Wabash Railroad on the southwest.

On October 3, 1882, Mr. Lothrop and wife conveyed the parcel in the northeast corner, marked "D, A, B, C," to Robertson & Bergen, and by mesne conveyances this parcel became the property of the defendant American Radiator Company. The conveyances relating to this portion of the property contain no easements, either by grant or reservation. Upon this parcel of land, containing a trifle more than six acres, a manufacturing plant was established, and has been maintained ever since.

At the time of this sale to Robertson & Bergen, in 1882, the parcel lying immediately west, and described by the letters, W, D, C, P, S, on the plat, was occupied by Force & Dickinson under a lease from Mr. Lothrop.

On April 11, 1885, Mr. Lothrop and wife conveyed that parcel of the property in the southeast portion of the plat east of the Wabash Railroad, and described within the

172 MICH.—2.

letters, P, B, M, N, O, to Miles C. Huyett, who immediately conveyed it to M. J. Murphy & Co. The latter company conveyed it to Murphy, Wasey & Co. in 1889. The name of this company was changed, in 1901, to the Murphy Chair Company, one of the complainants in this case.

Ever since 1885 this portion of the property, which contains about eight acres, has been continuously used as a manufacturing plant. The said deed to Huyett was recorded June 4, 1885, in Liber 275 of Deeds, page 558, in the register of deeds office for Wayne county; the description being:

" Land in the city of Detroit, Wayne county, Michigan, being part of outlots three (3) and four (4) of Theodore J. and Denis J. Campau's subdivision of fractional section twenty-nine (29) and thirty-two (32) in town one (1) south, range twelve (12) east, a plat of which is recorded in Book 2, page 2, of Plats, and described as follows: Beginning at the southeast corner of a piece of land heretofore sold and conveyed by said Lothrop to Robert A. Robertson and Zaccheus Bergen, and being 450 feet distant from the north line of said outlot 4; thence westerly on a line parallel to the southerly line of the Campau road 907.37 feet; thence southerly to the northerly line of the right of way of the Wabash, St. Louis & Pacific Railroad Company by a line at right angles to the northerly line of said right of way, and being a distance of about 30 feet; thence southeasterly along said northerly line of said railroad right of way until the same intersects the southerly line of said outlot 4; thence easterly along the southerly line of said outlot 4 until the same intersects the western line of land owned by the Detroit, Grand Haven & Milwaukee Railroad Company; and thence along the western line to the place of beginning, containing by estimate 8.07 acres; it being the intention to convey hereby all of outlots 3 and 4 lying northerly of the right of way of the Wabash, St. Louis & Pacific Railroad Company, except the portions heretofore sold to said Robertson and Bergen and to the Detroit, Grand Haven & Milwaukee Railroad Company, the parcel now leased to Force & Dickinson, and the 30-foot strip of land lying between the parcel occupied by Force & Dickinson and the right of way of said

Wabash, St. Louis & Pacific Railroad Company; also granting hereby to said second party a right of way from the land hereby conveyed over and along said 30-foot strip of land to Russel street, until Harper avenue shall be opened and extended across the right of way occupied by the Lake Shore & Michigan Southern Railway Company and the Wabash, St. Louis & Pacific Railroad Company, when such right shall cease. * * * Said land is sold subject to the express condition that when Harper avenue is opened across said last-mentioned railway said Huyett shall, without charge, open and extend said avenue across the southerly 40 feet of said premises. Said Lothrop, however, expressly reserves to himself, his heirs and assigns the following easement, viz., the right to lay, maintain and operate upon and across said premises, as near the north line thereof as shall be convenient and practicable, a railroad track to connect the premises now occupied by Force & Dickinson with the Detroit, Grand Haven & Milwaukee Railway, and for the use of the owners and occupants of the said premises, the strip of land to be used for said track not to exceed 15 feet in width, and if at any time said Huyett, his heirs or assigns, shall desire to use said tracks for the use of the premises hereby sold, jointly with the occupants of said Force & Dickinson premises, they shall have the right to do so, first paying therefor a share of any expenditure which said Lothrop or Force & Dickinson may have made in the building of said track, such share to be mutually agreed upon, or, if they fail to agree, to be fixed by the acting engineer for the time being of said railroad company. Said joint use shall be by each party without unreasonably obstructing the other."

On or about July 1, 1886, said George V. N. Lothrop entered into a certain land contract with Thomas W. D. Dickinson and Isaiah H. Force, by which said Lothrop agreed to convey to said Force & Dickinson the piece or parcel of land described in said plat within the letters W, D, C, P, S, together with the right to lay railroad tracks across or along the 30-foot strip between said premises and said railroad, and also that certain easement connecting said parcel with the railroad of the Detroit, Grand Haven & Milwaukee Railroad Company by a railroad

track, which was reserved by said first party by deed from him to Miles C. Huyett, dated April 11, 1885, and recorded in Liber 275 of Deeds, on page 558.

Some time prior to June, 1889, the Force & Dickinson land contract with Mr. Lothrop was assigned to Frederick W. Hayes, president of the Preston National Bank, to secure certain indorsements and guaranties made by him for them to obtain certain loans at the bank. Mr. Lothrop and Mr. Dickinson both died prior to 1899, and in the subsequent proceedings they were represented by their heirs and legal representatives. Mr. Hayes negotiated the sale of the east 100 feet of the Force & Dickinson property (parcel C, D, E, F, referred to in the record as the 100-foot strip) to the Radiator Company. Mr. Dickinson having died, leaving minor heirs, proceedings were taken on June 21, 1899, in the Wayne circuit court, in chancery, for leave to sell their interest in the parcel. The petition sets up that by the contract of 1886 Mr. Lothrop agreed to convey the parcel W, D, C, P, S,—

"Together with the right to lay a railroad track across or along the 30-foot strip between said land and said railroad [Wabash], and also that certain easement connecting said parcel with the railroad of the Detroit, Grand Haven & Milwaukee Railroad Company by a railroad track which was reserved by said first party by deed from him to Miles C. Huyett, dated April 11, 1885."

In pursuance of this petition, which was granted by the court, a tripartite indenture was made on June 22, 1899, whereby the Lothrop estate, Isaac F. Force, and the heirs of Mr. Dickinson conveyed the 100-foot strip to the Radiator Company; the conveyance expressly stating that it was executed and delivered by the said party of the first first part (the Lothrop estate) in pursuance and in partial satisfaction and fulfillment of said contract or agreement of sale of 1886. In order to carry into effect the provisions of the contract with reference to easements, so that the parcel sold to the Radiator Company, as well as the Force

& Dickinson parcel, might have the benefit thereof, the following provision was inserted in the deed:

"Together with the right to construct and maintain a railroad track across the southerly part of the remainder of said premises, and across or along the 30-foot strip mentioned in said contract or agreement of sale substantially upon the line of said track as at present constructed, and also the right to use and enjoy the said easement reserved in and by the deed and conveyance to said Huyett above mentioned; such rights of way and easements, however, to be used and enjoyed by the said party of the third part, its successors and assigns, in common with the owners and occupants of the remainder of the premises described and mentioned in said contract of sale.  *  *  *  It is expressly understood and agreed, however, by and between the parties hereto that the owners and occupants of the remainder of the lands and premises described and mentioned in said contract or agreement of sale shall have at all times the right to construct, use and maintain a railroad track across and upon the southerly end of the lands and premises hereby sold and conveyed, for the purpose of connecting the said remainder of said premises with the easement reserved in and by said conveyance to said Huyett as aforesaid; such railroad track to be substantially upon the line of the track now constructed and in use, and to be used and enjoyed in common with the said party of the third part, its successors and assigns."

It will be observed that this conveyance contains both a grant and reservation of easements, the manifest purpose of which was to secure to both parcels of the Force & Dickinson land the easements contracted for in the land contract of 1886.

It may be incidentally stated that Mr. Hayes next negotiated the sale of the west 190 feet of the Force & Dickinson tract, being parcel marked upon the plat W, T, R, S, to Briggs & Sill, who were succeeded by the American. Can Company.

Mr. Hayes negotiated the sale of the remaining 231.53 feet of the Force & Dickinson parcel, embraced in the plat between the letters T, E, F, P, R, to Henry Whiting, representing the complainant Murphy Chair Com-

pany, and the deed was made September 26, 1899, conveying the premises.

By deed dated December 2, 1899, and recorded April 24, 1900, Henry Whiting and wife conveyed to Murphy, Wasey & Co., a Michigan corporation, the name of which corporation has been since changed to the Murphy Chair Company, one of the complainants, all of said last-described property, which contained the following:

"Together with the mill buildings, machinery and all rights of way, easements and privileges belonging to said first party, including rails, etc., used in the construction of railways thereon and upon the rights of way appurtenant thereto; also all right to use tracks which have been or may be constructed over said premises, or the rights of way and easements hereinbefore mentioned."

By deed dated December 9, 1899, and recorded April 24, 1900, the complainant James F. Murphy, trustee, became the owner by mesne conveyances from said George V. N. Lothrop of the parcel of land known as the 30-foot strip, and designated on said plat by the letters P, S, V, O.

"This conveyance is made expressly subject to all easements thereon heretofore granted, and to the right of way granted to Miles C. Huyett, his heirs and assigns, by George V. N. Lothrop, since deceased, by deed dated April 11, 1885, and recorded in Liber 275 of Deeds, at page 558, which said easement, by the terms thereof, is to cease when Harper avenue shall be opened and extended across the right of way occupied by the Lake Shore & Michigan Southern Railway Company and the Wabash, St. Louis & Pacific Railroad Company, and also to all easements heretofore granted to lay, maintain and operate railway tracks along or across the premises conveyed."

It is the claim of the complainants that the legal title to said parcel of land is now in said James F. Murphy, as trustee; the title having been so taken for the express purpose of indicating that it is intended not to in any way merge the right of way of the complainant the Murphy Chair Company in said property in the legal title of the

same, or to in any manner change the relative rights, interests, and equities of said complainant the Murphy Chair Company in the said strip by virtue of the easement and right of way over it aforesaid, as against the holders or owners of any of the other easements existing over said strip of land.

On May 16, 1901, the American Radiator Company and the Murphy Chair Company delivered deeds *inter se;* each releasing the land of the other from certain easements relative to the Detroit, Grand Haven & Milwaukee Railway. The deed of the Radiator Company to the Murphy Chair Company contained the following recital, relating to the easement in the 30-foot strip, so-called:

" The right of way or easement pertaining or belonging to the last-mentioned piece or parcel of land described in a certain deed made by Henry B. Lothrop, as executor of the last will and testament of George V. N. Lothrop, deceased, and others, to the American Radiator Company, dated June 22, 1899, and recorded in the office of the register of deeds in and for said county, in vol. 511 of Deeds, page 407, as the right to construct and maintain a railroad track across the southerly part of the remainder of said premises (being the same premises referred to in said conveyance as contracted to Force & Dickinson, a part of which is owned by said Murphy, Wasey & Company), and across or along the thirty (30) foot strip mentioned in said contract, substantially upon the line of said track as at present constructed, is not released or conveyed, but is recognized or confirmed by the parties hereto."

Among other defenses of the defendant American Radiator Company, it claims, in its answer, that by the suit of *Stansell* v. *American Radiator Co.,* 163 Mich. 528 (128 N. W. 789), the matters involved in this suit were so far adjudicated that the subject has become *res adjudicata,* and that complainants are estopped by the decree in that case from maintaining this suit.

The bill of complaint in that cause was filed November 7, 1907, to remove the alleged cloud from the title to the 30-foot strip created by the easement of the American

Radiator Company, upon the theory that it was wiped out by a sale, and a 99-year lease from the city of Detroit, to the complainant for certain unpaid taxes assessed thereon after James F. Murphy, trustee, became the owner of the 30-foot strip.

The defendant American Radiator Company there filed its answer, basing its defense substantially upon the proposition that complainant acquired no rights from the tax sale, certificate, and lease, and that in law he was acting for the legal holder of the title of said premises, James F. Murphy, trustee, or his *cestui que trust*, and that the acquiring of said tax certificate by the complainant in that cause was, in fact and in law, the payment of taxes by the person, or persons, legally bound to pay the same.

It is true that in that case this court held that it would treat and did treat that suit as the suit of the Murphy Chair Company, and the property as the property of the Murphy Chair Company, and, in affirming the court below, which had dismissed the bill of complaint, held that it was the duty of the Murphy Chair Company to pay the taxes upon that property which were properly assessable to it; that to legalize such proceedings for the benefit of the grantor, and in fraud of the rights of others, would be a violation of the statute against resulting trusts. Section 8835 *et seq.*, 3 Comp. Laws.

It is also true that in that case this court used the following language:

"The deed of the defendant to the Murphy Chair Company, of May 16, 1901, was as much a binding agreement as to its rights to enjoy the easement as though the chair company had executed a deed confirming or granting the right of way to the defendant."

The answer of the defendant in that case denied that its rights, as to said easement, were subservient to the complainant's alleged tax lease. That seems to have been the matter in litigation in that case. We think that the doctrine announced by this court in *Le Roy* v. *Collins*, 165 Mich. 380 (130 N. W. 635), states the correct rule upon

this subject. It was there held that a judgment is not *res adjudicata*, unless the identical matter in issue in the subsequent proceeding was determined by the former adjudication.

What this court said of the force and effect of the deed of the American Radiator Company to the Murphy Chair Company, of May 16, 1901, wherein the Murphy Chair Company accepted the deed which contained the statement that the easement was not released or conveyed, but was recognized and confirmed by the parties thereto, may be said to be *res adjudicata* of that question.

It appears by the undisputed evidence that when the American Radiator Company purchased the 100-foot strip it did so intending to enlarge its plant; and that between the time that it purchased the said strip and the making of the deed of May 16, 1901, just referred to, it had extended its plant and buildings upon the 100-foot strip, and was using the entire of its premises as one plant.

It appears that a track was laid from the Wabash to the Force & Dickinson parcel, but they used it very little; the great bulk of their business being with the Detroit, Grand Haven & Milwaukee. The Radiator Company never used this track, which did not touch its original parcel; nor did it have any business relations with Force & Dickinson. The track from the Wabash over to the 100-foot strip was removed immediately after the execution of the deeds between the American Radiator Company and the Murphy Chair Company in 1901. This is not denied by the defendants; counsel for the defense saying:

"That these tracks were actually removed after the deed of 1901 is probably true, but there is nothing to show that the removal of these tracks was in pursuance of an express understanding; and, inasmuch as the rails themselves did not belong to the Radiator Company, there was nothing that the American Radiator Company could do to prevent their being taken up. The easement given by the 1899 deed, and confirmed by the 1901 deed [from the American Radiator Company to the Murphy Chair Com-

pany], expressly requires the American Radiator Company to lay its own track, at its own expense, with the right to others, upon contribution, to use the same, should they desire.  In May, 1901, the American Radiator Company did not have need to exercise its easement to the Wabash, but out of 'an apparent abundance of precaution' had its right to such easement recognized and confirmed by the Chair Company.  We say 'an apparent abundance of precaution,' because opposing counsel now claims that the Radiator Company did not exercise precaution enough in making the Chair Company recognize the intent in the creation of the easement of having it inure to the entire benefit of the Radiator Plant.     *   .*   *   Why counsel asserts that the Radiator Company should have objected or protested against the Murphy Chair Company removing the tracks to the Wabash by it, at the time the Chair Company accepted a deed recognizing and confirming the right of the Radiator Company to build its own track to the Wabash, we cannot understand."

Counsel further proceed to argue, in answer to the claim of complainants' counsel that no indication had ever been given by the Radiator Company of a desire to build a track until after the institution of the present suit, that this is not true, and in support of his argument he quotes from a letter from the vice president of the Radiator Company, bearing date May 23, 1907, showing that it was deemed—

"Important for us to have a right of way to a second railroad, even though but one is used, and, as before stated, we always endeavor to have this arrangement at all of our plants."   Stansell R. p. 95.

This is urged as evidence of the fact that the Radiator Company considered the easement a valuable one, and therefore it declined to release the same to the complainant.

It should be borne in mind that the easement granted to Huyett, in April, 1885, and which has by mesne conveyances come to the Murphy Chair Company, was the *first* easement created over the 30-foot strip.  It was then supposed that Harper avenue would be opened.  The rec-

ord shows that two attempts were made to open it, but both failed; and it has never been opened. Ever since 1885 this original Chair Company property has been continuously used as a manufacturing plant. It is claimed by the Murphy Chair Company that since 1885 the 30-foot strip has been continuously used as the only outlet to Russell street from its said plant. Its important value to the Murphy Chair Company is apparent. It appears that the easement has been used continuously by as many as 100 vehicles a day, and by hundreds of the employés and customers of said complainant, during all of the years that have intervened. It is urged that not only is it the senior easement, but that its untrammeled enjoyment by the Murphy Chair Company is of paramount importance. It is also urged that all subsequent easements were accepted with knowledge of its existence (the Huyett deed having been recorded on June 4, 1885), and that the use of the right of way for teams and persons was open, notorious, and continuous. These easements are appurtenant, and not in gross.

An examination of this record satisfies us that the easement of the Murphy Chair Company is both prior and paramount. Mr. Lothrop, owning the 30-foot strip in fee simple absolute, in 1885 granted a right of way over it to Huyett, his heirs and grantees, and the latter conveyed it to the predecessor of said complainant. As the result of this grant, Mr. Lothrop retained the right to use the 30-foot strip in any way he chose, except so as not to interfere with the user under the Huyett grant.

After the Murphy Chair Company had used this easement as a right of way in its business for over 14 years, the Radiator Company purchased an easement to construct and maintain a railroad track across or along said strip. Mr. Lothrop could not sell, nor could the Radiator Company buy, such an easement, except subject to the Huyett grant of 1885. We think that this view is sustained by the following authorities: *Harvey* v. *Crane*, 85 Mich. 316 (48 N. W. 582, 12 L. R. A. 601); *Fankboner* v. *Corder*, 127

Ind. 164 (26 N. E. 766); *Walker* v. *Newhouse*, 14 Mo. 373; *Harris* v. *Curtis*, 139 App. Div. (N. Y.) 393 (124 N. Y. Supp. 263); *Schmidt* v. *Brown*, 226 Ill. 590 (80 N. E. 1071, 11 L. R. A. [N. S.] 457, 117 Am. St. Rep. 261).

The purchaser of an estate which is charged with an easement which is discoverable upon examination, such as an open and visible roadway, takes his title subject to such easement, to the extent his grantor is bound thereby.

In so far as the use of the 30-foot strip by the defendants for railroad purposes interferes with the Murphy Chair Company's user for right of way, under the Huyett grant, the last-named grant is paramount. This is so, not only because the grant to Huyett was the senior grant, but also because that grant gave the user for a right of way generally for vehicles and persons to pass to and fro; and any subsequent grant which impairs that right must be subordinate to the grant of such right of way. See, also, *West Jersey, etc., R. Co.* v. *Traction Co.*, 65 N. J. Eq. 613 (56 Atl. 890); *Mayor, etc., of Newark* v. *Railroad Co.*, 75 N. J. Eq. 20 (71 Atl. 620).

It is equally true that the owner of the easement cannot prevent another, even a trespasser, from using the land, if his use does not impede the free exercise of the right of passage. The right of the Murphy Chair Company, in the exercise of its easement over the 30-foot strip, confers only the right of passing over it, together with such rights as are necessarily incident to its reasonable enjoyment as a way, such as keeping in passable condition, etc. While we do not mean to hold that said complainant's right of way is exclusive, we do hold that its right to a reasonable, free use as a passageway should not be interfered with by the defendants. It is elementary that an easement once granted is an estate which cannot be abridged or taken away, either by the grantor or his subsequent grantees. On the other hand, the grantor of the easement of a right of way may use the way in any manner he sees fit, provided he does not unreasonably interfere with the grantee's reasonable use in passing to and

fro.   The owner of the right of way has the right to a reasonably unobstructed passage at all times, and also such rights as are incident or necessary to the enjoyment of such right of passage.   1 Boone on Real Property, § 143b.

We cannot agree with the complainants in the claim that the easement of the defendant the American Radiator Company has been lost by nonuser.   It is an easement by grant; and a user so created cannot be lost by mere nonuser.   *Day* v. *Walden*, 46 Mich. 575 (10 N. W. 26); 14 Cyc. p. 1187.

We do not think that the purchase of the 30-foot strip by complainant James F. Murphy, trustee, operated as a merger of the Murphy Chair Company's easement over said property.   Had the title been taken in the name of the Chair Company, probably a merger and extinguishment would have taken place for one cannot have an easement in his own estate in fee.   *Morgan* v. *Meuth*, 60 Mich. 238 (27 N. W. 509); 14 Cyc. p. 1188.   We do not think that this view is inconsistent with the holding in *Stansell* v. *American Radiator Co.*, *supra*.

In April, 1901, the Murphy Chair Company applied to the board of assessors of the city of Detroit to have the easements over the 30-foot strip assessed separately, so that each party might pay taxes on its own easement.   A hearing was had, but no change was made; and this court has since decided in the *Stansell Case*, *supra*, that it was the duty of the holder of the fee to pay the entire tax.

In that application the Murphy Chair Company recognized the right of the American Radiator Company to the easement to construct and maintain a railroad track across the 30-foot strip, as appurtenant to the 100-foot strip, to connect the latter with the Wabash, St. Louis & Pacific Railroad Company.

It is urged by complainants that by no possibility can the easement contained in the deed of June 22, 1899, from the Lothrop estate and others to the American Radiator Company inure to the benefit of the original Robertson &

Bergen parcel. It is the claim that such would be an excessive use.

In view of the fact that when the deeds *inter se* were delivered, the Radiator Company had already extended its plant onto the 100-foot strip, and was occupying and using its property as a whole, to the knowledge of complainants, and in view of the language of this court, above quoted, relating to such deeds, in *Stansell* v. *American Radiator Co., supra,* there is force in the position of the defendants that, in construing such instruments, the court will look into the circumstances attending the transaction, the situation of the parties, and the state of the thing granted, to ascertain the intent of the parties.

We do not, however, find it either necessary or prudent at this time to pass upon the question of the claimed excessive use of the easement over or on the 30-foot strip, for the reason that complainants are not concerned with that matter, so long as they are not interfered with or disturbed in the reasonable use of such easement as a right of way; and upon that subject we have expressed our views.

We agree with the court below in its decree that any proceedings taken, or to be taken, by the common council of the city of Detroit to open a new street, or to change the grades of the railroad track, have no bearing upon the issues in this case.

When those questions do arise, the decree should provide that either party be authorized to apply to the circuit court for further orders and direction, not inconsistent with the views here expressed, as to the priority and permanent right of the Murphy Chair Company in the enjoyment of its easement of a right of way over the 30-foot strip of land; and that the right of the defendants to build and maintain a railroad track thereon shall be subordinate to such superior right of said complainant. It goes without saying that neither party shall have the right to unnecessarily harass or annoy the other. The defendants should not have the right to block the way of the

Murphy Chair Company by leaving a car or cars standing on or across such wagonway, or by storing cars thereon; neither should the Murphy Chair Company block the American Radiator Company's right of way by leaving a vehicle or vehicles standing across such railroad track. A reasonable exercise of each party's rights, as herein indicated, is what is required. The decree of the circuit court should be modified in accordance with this opinion, and, as so modified, will stand affirmed, except as to the matter of costs.

An examination of the record shows that the complainants did not prevail upon all of the claims made by them in the court below. No costs to either party should be allowed in the circuit court. The complainants will be allowed their costs in this court, to be taxed against both defendants.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred.