STATE OF MICHIGAN
COURT OF APPEALS

RANDY HILDEBRANT, also known as RANDY
HILDEBRANDT,

        Plaintiff-Appellee,

v

SHANNON BADGERO, JOHN L. STEFFES, and
SHAWN REIM,

        Defendants-Appellants,

and

ROBERT K. KAUFMAN,

        Appellant.

UNPUBLISHED
September 13, 2018

No. 341117
Mecosta Circuit Court
LC No. 16-023528-CH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this property dispute, defendants Shannon Badgero, John L. Steffes, and Shawn Reim, together with their trial counsel, Robert K. Kaufman, appeal the trial court's order granting partial summary disposition in favor of plaintiff, Randy Hildebrant, and the trial court's subsequent judgment in favor of plaintiff. We affirm.

I. BACKGROUND

The Weeks family owned four adjacent parcels of property in Morley, Michigan, labeled parcels B, C, D, and E. Parcel B is the northern-most parcel, followed by C, D, and E. An easement, known as Weeks Drive, runs along the eastern border of the properties, ending at parcel E. Thus, in order to gain access from the main road, named Three Mile Road, to parcel E, a person must cross parcels B, C, and D by way of Weeks Drive. The western boundary of the four properties borders a wooded trail with a forest and other property on the other side. The following diagram illustrates the layout of the properties:[1]

---

[1] For ease of reference, this Court has included a compass with the diagram.



A member of the Weeks family eventually conveyed parcel E to Corinne K. Cousineau (known at the time as Corinne K. Nelson) by warranty deed. Cousineau obtained approval from Aetna Township to split parcel E into two separate parcels, known as parcels E1 and E2. The parcels are split horizontally, where parcel E1 is north of parcel E2. The split effectively landlocked parcel E2, leaving it with no access to a main road. In 2005, Cosineau conveyed Parcels E1 and E2 to Kimberly Freas. Parcel E1 was conveyed by warranty deed and Parcel E2 was conveyed by quitclaim deed. The deeds to parcels E1 and E2 contained language establishing an easement over parcel E1 for the benefit of parcel E2 so that it could have access to Weeks Drive and ultimately Three Mile Road.

On the same day that Freas obtained the parcels, she also obtained a mortgage over parcel E1. In 2012, Flagstar Bank foreclosed on the mortgage, and parcel E1 was sold to defendant Reim. Defendants Badgero and Steffes purchased parcel E1 from Reim by way of a land contract. Freas retained in fee simple parcel E2 until she conveyed the property to Anthony Joseph Evans. In 2013, Evans sold parcel E2 to plaintiff. In 2015, plaintiff received a letter from defendant Reim's attorney, Kaufman, threatening prosecution for trespass if plaintiff continued to traverse defendants' property in his truck to get to his own property. On May 28, 2015, plaintiff attempted to access his property along Weeks Drive, but Reim blocked entry where parcel E1 bordered parcel D on Weeks Drive. Plaintiff filed a police report. Over defendants' objection, plaintiff obtained a special use permit to build a manufactured home, but defendants continued to refuse to allow plaintiff access to his property. Plaintiff asserted he was forced to incur extra living expenses because he could not access his land and build his home. Further, defendants removed the locks to plaintiff's well and began supplying water to their property. A surveyor concluded that the well was on plaintiff's property.

Plaintiff brought a quiet title action seeking a declaration that he has an appurtenant easement over parcel E1 for ingress and egress to his landlocked property. Plaintiff's complaint alleged the existence of an easement on three distinct theories—express easement, easement by

implied reservation/implied grant, and easement by necessity—and also included claims for ejectment, trespass, and conversion. He also sought a declaration that the water well was his property, to enjoin defendants from using the well, and damages. Plaintiff filed a motion for summary disposition under MCR 2.116(C)(9) and (C)(10), arguing there was no genuine issue of material fact that he had an express easement, an easement by implied reservation/implied grant, and an easement by necessity. The trial court granted partial summary disposition in favor of plaintiff, concluding that plaintiff had an express easement as set forth in the deed from Cousineau to Freas. With respect to the alternative grounds for finding an easement, the trial court stated:

> And as to the implied easement; easement by necessity; whether it's the reasonably necessary or strictly necessary standard, both of those are satisfied. . . . But I think that as to the reasonable necessity, the continuity of use, the unified nature of the two lots were once one common owner were split, that roadway that existed for a long time; documented by the aerial photographs, I think there is no question that there was an understanding at the time of . . . common ownership that when that single unified lot was split, that southern lot that resulted from the split, subsequently owned by plaintiff, reasonably needed to go over the pathway that was well established and continuously existed for many, many years. . . . . An absolute necessity here. There's no question, no challenge that the lot that plaintiff purchased, that at the time it was split by Ms. Nelson/Cousineau, it was landlocked and it was absolutely necessary to use the 66-foot easement over defendants' resulting parcel to get to the public way on Three Mile Road.

The trial court deferred ruling on remaining issues relating to an injunction, ownership of the well, damages, and sanctions. At the conclusion of the hearing, the trial court convened a meeting in chambers with the attorneys for plaintiff and defendants. Thereafter, defendants filed objections to plaintiff's proposed order, two motions to disqualify the trial judge for bias, a motion for sanctions, and a motion for reconsideration of the order granting partial summary disposition in favor of plaintiff. The trial court denied the motions for disqualification, which were then reviewed and denied by a judge appointed by the State Court Administrator's Office. Additionally, the trial court denied the motion for reconsideration. Following a hearing on plaintiff's remaining claims, the trial court entered an order granting an injunction enjoining defendants from "blocking or otherwise interfering with Plaintiff's superior right of use of said 66 foot wide easement over the East 66 feet of Defendants' Parcel, for all purposes of ingress and egress to Plaintiff's Parcel." The order also enjoined defendants from removing water through plaintiff's well, ordered defendants to remove their pipes and wires leading to plaintiff's well, awarded plaintiff $8,400 in compensation for costs related to additional housing expenses incurred as a result of defendants' obstruction of the easement, and awarded plaintiff $500 for the use of plaintiff's well. Defendants now appeal, challenging the trial court's decisions as to the easement, the decision on the motion for reconsideration, the request for sanctions, and the judicial bias determination. They request this Court to conclude that plaintiff does not have an easement appurtenant over defendants' parcel, that the trial court should be disqualified, and, should the case be remanded, that a new judge should be reassigned to the case on remand.

## II. MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Home-Owners Ins Co v Smith*, 314 Mich App 68, 73; 885 NW2d 324 (2016). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When reviewing a motion under this subsection, the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties must be considered "in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. Additionally, "because deeds are contracts, the interpretation of their language is an issue of law, which this Court reviews de novo." *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014). Likewise, a trial court's equitable decisions, including decisions in an action for a prescriptive easement, are reviewed de novo. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). A party claiming a right to an easement has the burden of proving the claim by a preponderance of the evidence. *Schmidt v Eger*, 94 Mich App 728, 731; 289 NW2d 851 (1980).

### B. ANALYSIS

Defendants contend that the trial court erred when it granted partial summary disposition in favor of plaintiff. We conclude that the trial court did not err when it concluded there were no genuine issues of material fact and held that plaintiff demonstrated by a preponderance of the evidence the existence of an implied easement by necessity.

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997). " '[A]n easement may be created by express grant, by reservation or exception, or by covenant or agreement.' " *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 661; 651 NW2d 458 (2002) (citation omitted). Michigan courts recognize two types of easements: easements appurtenant and easements in gross. *Penrose*, 308 Mich App at 148. An appurtenant easement attaches to the land and is incapable of existence apart from the land to which it is annexed. *Schadewald*, 225 Mich App at 35. An appurtenant easement is "necessarily connected with the use or enjoyment of the benefited parcel and may pass with the benefited property when the property is transferred." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). This is true even if the easement is not specifically mentioned in the deed. *von Meding v Strahl*, 319 Mich 598, 611; 30 NW2d 363 (1948). However, one cannot have an easement in one's own land. *Morgan v Meuth*, 60 Mich 238, 254; 27 NW 509 (1886). Thus, "the union of the dominant and servient estates in the same owner extinguishes prior easements." *von Meding*, 319 Mich at 605 (citation omitted). The land served or benefited by an easement appurtenant is called the dominant estate, and the land burdened by an easement appurtenant is called the servient estate. *Rusk v Grande*, 332 Mich 665, 669; 52 NW2d 548 (1952).

## 1. EXPRESS EASEMENT

"In order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude." *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998). Plaintiff's claim of an express easement arises out of Cousineau's conveyance of parcel E2, together with an easement ending at the boundary between parcel E1 and parcel E2, by quitclaim deed to Freas. Plaintiff claimed that Cousineau expressly granted an easement to burden parcel E1 for the benefit of parcel E2 by recording the deed, which included the description of an easement across the newly created parcel E1. He also claimed that Freas's mortgage on parcel E1 prevented unity of title in Freas over both parcel E1 and parcel E2, even though Cousineau conveyed parcel E1 by warranty deed to Freas.

Although Cousineau split parcel E into parcels E1 and E2, she retained ownership of both parcels. Cousineau subsequently conveyed both parcel E1 and parcel E2 to Freas. Thus, Freas also acquired title to and ownership of both parcel E1 and parcel E2. One cannot have an easement in one's own land. *Morgan*, 60 Mich at 254. It appears that the intent at the time of the conveyances to Freas was to burden parcel E1 with an easement for ingress and egress to parcel E2 in the event that the bank foreclosed upon the mortgaged parcel (E1), leaving Freas as the owner of only parcel E2, thereby rendering parcel E2 landlocked. However, an easement is extinguished when the same person becomes the owner of both pieces of property. See *Bricault v Cavanaugh*, 261 Mich 70, 72; 245 NW 573 (1932); see also *Penrose*, 308 Mich App at 150. Thus, the apparent intent to create an easement with parcel E2 being the dominant estate and parcel E1 being the servient estate, failed as a matter of law because Freas could not have an easement in her own property. *Rusk*, 332 Mich at 670; *von Meding*, 319 Mich at 605; *Dimoff v Laboroff*, 296 Mich 325, 328; 296 NW 275 (1941). Because Freas acquired title to both parcel E1 and parcel E2, no easement appurtenant attached to parcel E2. Thus, the only express easement that existed ended at the north property line of parcel E1 (the original point of beginning of the easement over parcels B, C, and D, that was conveyed to Cousineau and, subsequently, to Freas) and did not extend over parcel E1 to parcel E2.

Plaintiff asserts that unity of title with Freas did not exist because Freas granted a mortgage on parcel E1 to Flagstar Bank. However, " '[t]he rule is well settled that a real estate mortgage does not transfer title of the land to the mortgagee, but rather the mortgagee has a lien on the land to secure the debt.' " *McKeighan v Citizens Commercial & Savings Bank of Flint*, 302 Mich 666, 671; 5 NW2d 524 (1942). Therefore, the existence of a mortgage on parcel E1 did not affect the unity of title with Freas, and does not support the existence of an express easement for the benefit of parcel E2.

## 2. IMPLIED EASEMENT

An implied easement may arise in two ways: (1) by necessity or (2) when property either burdened with or served by a quasi-easement is severed and conveyed to another. *Schmidt*, 94 Mich App at 732-733; see also *Forge*, 458 Mich at 211 n 38.

The trial court found that plaintiff had an easement by necessity over parcel E1. An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Chapdelaine*

*v Sochocki*, 247 Mich App 167, 172; 635 NW2d 339 (2001), citing *Schmidt*, 94 Mich App at 732. "An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked." *Chapdelaine*, 247 Mich App at 172–173.

Parcel E1 was separated from parcel E2 when the bank foreclosed on the mortgage[2] secured by parcel E1, and parcel E1 was conveyed to Reim. At that point, the divestiture of parcel E1 left parcel E2 landlocked, and an easement by necessity was created. The documentary evidence clearly demonstrates that, without an easement over parcel E1, no means of ingress and egress to parcel E2 existed. Thus, plaintiff met his burden of showing that an implied easement by necessity was established because use of the easement over parcel E1 is strictly necessary to reach parcel E2. See *Charles A Murray Trust v Futrell*, 303 Mich App 28, 48; 840 NW2d 775 (2013). Once established, an easement by necessity is appurtenant to the land and it passes with successive transfers. See *Bean v Bean*, 163 Mich 379, 397; 128 NW 413 (1910). However, when strict necessity ends, such as when another way to the property has been acquired, the easement also ceases to exist. *Charles A Murray Trust*, 303 Mich App at 42, 55.

Defendants argue that the easement is not necessary because the easement over defendants' parcel does not reach a public highway. Rather, defendants argue, the easement over parcel E1 extends only to the northern boundary of parcel E1, where it borders parcel D, which does not provide access to Three Mile Road. This argument is without merit. Parcels B, C, D, and E were formerly commonly owned by Darrell and Wendy Weeks. When Darrell and Wendy Weeks conveyed parcel E to Cousineau by warranty deed, they conveyed an express easement for purposes of ingress and egress over and across lands of others for Parcels C, D and E to provide access to Three Mile Road. This created an express easement for the benefit of parcel E over the remaining parcels to provide access to Three Mile Road. When the subsequent divestiture of parcel E1 and parcel E2 left parcel E2 landlocked, an easement by necessity was created over parcel E1, where it joined the express easement over the remaining parcels to the north.

### 3. IMPLIED EASEMENT BY QUASI-EASEMENT

The trial court also found that plaintiff had an implied easement by quasi-easement. Because an implied easement by necessity exists, we need not address this alternative ground for establishing an easement. Nonetheless, we address this issue for purposes of finality.

An easement implied from a quasi-easement requires that, at the severance of an estate, an obvious and apparently permanent servitude already exists over one part of the estate in favor of the other. It also requires a showing of reasonable necessity. Thus, three things must be shown: " '(1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits.' " *Charles A Murray*

---

[2] Freas did not create an easement over parcel E1 benefiting parcel E2 by reservation in the mortgage.

*Trust*, 303 Mich App at 42, quoting *Schmidt*, 94 Mich App at 731. An easement implied from a quasi-easement is an easement appurtenant that runs with the land. *Charles A Murray Trust*, 303 Mich App at 41-42. The rationale for this type of easement is set forth in *Rannels v Marx*, 357 Mich 453, 456; 98 NW2d 583 (1959), which, quoting *Rischall v Bauchmann*, 132 Conn 637, 642; 46 A2d 898 (1946), observed:

> [T]he law implies that with the grant of the one [parcel] an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage in substantially the same condition in which it appeared and was used when the grant was made.

Although the servitude involved in a quasi-easement must arise during a period of unified title, "an easement cannot exist over one part of a person's land in favor of another part when both parts remain in that person's possession." *Schmidt*, 94 Mich App at 737. Therefore, the key inquiry under the first element is whether the servitude existed at the date of severance of the parcel. *Id*. In this case, documentary evidence showed that, at the time of the severance, Weeks Drive ran from Three Mile Road across what is now defendants' property and provided the only means of ingress and egress to what is now plaintiff's property. Accordingly, plaintiff satisfied the first element.

The second requirement, continuity, has been examined by this Court in the context of driveway cases. In *Rannels*, 357 Mich at 458, the Court held with respect to a joint driveway along the property line of adjoining neighbors:

> This is an instance where previous use in possession of the common grantor was visible, apparent even to a casual observer, continuous, and necessary to convenient use of the property. *Federal Savings & Loan Ins Corp v Urschel*, 159 Kan 674; 157 P2d 805. Such a use prior to division of the property has been referred to as a quasi-easement. At time of sale of the property without reference to the quasi-easement, an easement is held to exist by implication because of the obvious intention of the parties.

In this case, plaintiff presented documentary evidence that the use of the easement over parcel E1 to access parcel E2 was visible, apparent to a casual observer, continuous, and necessary to the convenient use of parcel E1. Plaintiff demonstrated that an easement was previously established and continuously utilized and gave rise to a finding that a quasi-easement existed. Accordingly, the trial court did not err in ruling that an easement implied from a quasi-easement existed.

Defendants also raise arguments unrelated to an express easement. They maintain that the deed from Darrell and Wendy Weeks to Cousineau allowed "zero" splits of parcel E. However, parcel E was split in 2003, and the propriety of the split has never been challenged in an appropriate proceeding, and there has been no determination that the prohibition against splitting parcel E affects any of the parties' current interests in their respective parcels. Further, any cause of action for violation of the terms of the conveyance to Cousineau would properly lie with the prior owners. Indeed, as the trial court noted, defendants' parcel was a product of the

split. Defendants argue that an easement over their property would not provide plaintiff with access to a public highway because plaintiff would also need to travel over parcels B, C, and D to reach the public highway, and the trial court had no proof that the owner of those parcels would allow plaintiff to cross those parcels. As explained earlier, an express easement over those parcels for the benefit of parcel E was previously created by members of the Weeks family when parcel E was conveyed to Cousineau. Moreover, as the trial court noted, defendants have no standing to object to plaintiff's use of the easement over the parcels to the north of defendants' parcel (parcels B, C, and D); any objection to plaintiff's use of those parcels for ingress and egress to Three Mile Road belongs with the owners of those servient parcels.[3]

### III. MOTION FOR SANCTIONS

Defendants claim the trial court clearly erred by denying their motion for sanctions. We disagree.

This Court reviews for clear error a trial court's determination whether a claim was frivolous and whether sanctions are warranted. *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 585; 887 NW2d 205 (2016). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

Plaintiffs made an oral motion for sanctions at the summary disposition hearing.[4] The record reflects that defendants and Kaufman subsequently filed their own motion for sanctions against plaintiff's attorney for making a baseless oral motion for sanctions against them. The trial court denied that motion, ruling:

> Defendants' brief in sizeable part appears to fixate on the issue decided at the February 24, 2017, hearing. Additionally, where the brief does address the issue of sanctions, the case law cited in the brief is offered in a cursory manner, and the majority of the case law is from other jurisdictions. Upon review of [d]efendants' motion for sanctions, the court finds that the motion is meritless and denies the relief requested therein.

---

[3] Defendants did not make any substantive challenge to the trial court's ruling on the motion for reconsideration, instead claiming that the trial court improperly denied the motion because it was untimely. Assuming this was in error, the trial court did address the substantive merits of defendants' motion, concluding that they had not demonstrated palpable error requiring correction. Thus, even if the trial court's ruling on the procedural defect was erroneous, any such error was harmless. MCR 2.613(A).

[4] The trial court also denied plaintiff's oral request for sanctions, finding that "there has been no follow-up documentation that properly sets the stage for that request for sanctions to be considered."

On appeal, defendants acknowledge that an "oral motion for frivolous filings sanctions couldn't be said to violate . . . MCR 2.114(D)." They rely on foreign authority in support of their assertion that a "motion for frivolous filings sanctions, which omits to demonstrate grounds for characterizing the non-movant's filing as frivolous, is itself a punishably frivolous filing." However, they have made no attempt to demonstrate that plaintiff's request for sanctions was frivolous, notwithstanding that the court denied his motion. Merely because a party does not prevail on an argument does not render the argument frivolous. *Kitchen*, 465 Mich at 662. "An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims[.]" *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Defendants' cursory treatment of the issue may constitute abandonment of their arguments on appeal. See *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) ("[T]his Court need not address an issue that is given only cursory consideration by a party on appeal."). Nonetheless, accepting defendants' argument that a motion for sanctions may be regarded as frivolous, defendants have failed to show that the trial court clearly erred by rejecting defendants' argument that plaintiff's motion was frivolous, and thus denying defendants' motion for sanctions on that basis.

## IV. MOTION TO DISQUALIFY

Defendants claim the trial court abused its discretion when it denied their motion to disqualify the trial judge. We disagree.

"When this Court reviews a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion; however, the applicability of the facts to relevant law is reviewed de novo." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

Defendants filed a motion to disqualify Judge Scott Hill-Kennedy on the ground that he was biased against them. They conceded in their brief in support of the motion that they "learned the basis for the present motion" on February 24, 2017, and that the motion was untimely. Defendants' claim of bias was based on comments purportedly made by Judge Hill-Kennedy in chambers following the February 24, 2017 summary disposition hearing.

The transcript of the hearing reflects that plaintiff's counsel asserted that the defense was "basically frivolous and devoid of . . . arguably legal merit, and [defendants] should be assessed attorney fees and costs pursuant to the court rule." At the conclusion of the hearing, the court stated that plaintiff's oral motion for sanctions was "premature because I haven't concluded the case yet."

In their brief in support of the motion for disqualification, defendants asserted that Judge Hill-Kennedy elaborated on why it was premature to decide plaintiff's motion for sanctions during an off-the-record conference in chambers. They asserted that the judge told Kaufman in chambers

that it wanted no appeal of its ruling granting in part [plaintiff's] motion. This Court said that if Kaufman could arrange for this case to be disposed of without entry of an appealable order then the court wouldn't impose sanctions on the defense. It's a fair inference from negative implication that this court then intended to convey that if Kaufman exposed this court's ruling to the risk of appellate reversal then this court would punish Kaufman's temerity by imposing sanctions against him.

In support of their motion, defendants submitted the affidavit of Kaufman, who averred that during the in-chambers meeting, Judge Hill-Kennedy "announced that it was his desire that his ruling, granting in part [plaintiff's] summary disposition motion, and holding that [plaintiff] had an access easement over the defendants' property, not be appealed and that it was his preference that the case be settled." Kaufman further averred that "Judge Hill-Kennedy there and then stated that it was to be wished that the parties not become obliged to assume the expenses of an appeal from a decision affecting property of such slight value." Kaufman also averred that "Judge Hill-Kennedy there and then further stated that if the case were settled then he wouldn't grant [plaintiff's] oral motion . . . for frivolous filings sanctions." Defendants also argued that the trial court's ruling that plaintiff had an easement across defendants' property was contrary to controlling authority and demonstrated bias against defendants. Finally, they argued that they demonstrated good cause for the untimely filing of the motion for disqualification because they "are filing a motion for reconsideration of [the] court's February 24, 2017 order" and that "[i]t's unlikely that, after threatening retaliation for an appeal, Judge Hill-Kennedy could dispassionately assess a motion that he reverse himself instead." They asserted that the trial court's ruling on the motion for summary disposition was clearly erroneous and, therefore, because Judge Hill-Kennedy would not reverse his decision because of bias against defendants, the error would be outcome-determinative.

Plaintiff responded that Kaufman's affidavit did not comport with MCR 2.119(B)(1) because it did not "include all mandated particulars" and was "full of inaccuracies and does not comport with the content of the meeting in chambers." Plaintiff submitted an affidavit from his own attorney, Steve Lobert, who averred, in relevant part:

D. At the conclusion of the Plaintiff's Summary Disposition hearing on February 24, 2017, I met in the Honorable Scott Hill-Kennedy's chambers with the said judge and Defendants' counsel, Robert Kaufman.

E. My recollection of the in chambers meeting is that the parties merely discussed the benefits and drawbacks of settling this case versus trying the same to a conclusion and it was merely an informal effort between the parties that were present to discuss the framework and possibilities of an equitable settlement. I do not specifically recall the judge making the statements referred to in paragraphs 4, 5 and 6 of Mr. Kaufman's purported "affidavit" in support of Defendants' motion for disqualification.

F. Part and parcel to said discussion, the judge clearly stated that he had not made any final decision on the matters that remained to be decided, and would

not render such a decision until taking our respective clients' evidence and arguments into account as they were presented throughout the course of the case.

     G.  The meeting in chambers was no different than the dozens of similar meetings that I have personally had in many judge's chambers with other opposing counsel wherein the benefits of finding common ground and a resolution short of litigation was discussed.

     H.  In no way, shape or form did Judge Hill-Kennedy threaten any pre-determined result if this case did not settle prior to trial.

     I.  I have found the Honorable Scott Hill-Kennedy to be a judge with the highest degree of integrity and have not observed him ever engage in any activity that could remotely be considered to approach even the appearance of impropriety.

Plaintiff argued that defendants' motion to disqualify Judge Hill-Kennedy contained allegations made without any basis in fact and that the motion should be denied "both procedurally (as untimely and not supported by the proper evidence) and substantively as it is inaccurate" and based on defense counsel's suggestion that defendants would be punished if they did not settle prior to a final disposition by the court.

The trial court held a hearing on the motion for disqualification. The trial court denied the motion for disqualification on the ground that the motion was untimely, but the court also addressed the merits of the motion "as a separate and distinct reason for denial." The trial court provided a lengthy explanation on the record of its reasons for denying the motion. In summation, the trial court ruled:

     So, folks, I don't find any evidence of actual bias. I don't find the appearance of impropriety. I don't think the due process *Caperton* standard has been violated. So for the reasons I just stated and the reasons I stated at the beginning of this Disqualification Hearing, I'm denying the Motion to Disqualify.

The denial of the motion to disqualify was referred to the state court administrator for de novo review. The state court administrator appointed Judge David A. Thompson to review the motion. Judge Thompson issued an opinion and order denying the motion for disqualification, finding that defendants' motion to disqualify was untimely and that defendants made no attempt to show good cause for the untimely motion, and instead merely asserted that "plain error" would result if Judge Hill-Kennedy was permitted to preside over the matter. Judge Thompson also found that no actual bias or prejudice existed from Judge Hill-Kennedy's alleged conduct, and that "no reasonable person would find that based on all the facts and circumstances that Judge Hill-Kennedy could not impartially decide this case."

Defendants now argue that Judge Hill-Kennedy's bias against defendants should have disqualified him from deciding defendants' motion for sanctions. Initially, as defendants concede, the motion for disqualification was untimely. MCR 2.003(D)(1)(a) requires that a motion to disqualify be filed within 14 days after the moving party discovers the ground for disqualification, and MCR 2.003(D)(1)(d) provides that untimely motions may be granted for

-11-

good cause shown and that "untimeliness is a factor in deciding whether the motion should be granted." The motion was based on events that occurred during the in-chambers conference on February 24, 2017, so the purported grounds for disqualification would have been discovered that day. Defendants filed their motion more than six weeks later, on April 10, 2017.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). Under MCR 2.003(C)(1), a judge must be disqualified from hearing a case in which he cannot act impartially or is biased against a party. However "[a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell*, 296 Mich App at 523. MCR 2.003(C)(1)(b) provides that disqualification of a judge is warranted if "[t]he judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." For purposes of this appeal, defendants cite to, but do not discuss, the following subsections of Canon 2:

> A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

> B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.

Defendants argue that Judge Hill-Kennedy's off-the-record "resort to baseless threats" in an attempt to frighten defendants into relinquishing their appeal rights" was improper and evidences bias. The only evidence relied upon by defendants in support of their motion for disqualification was Kaufman's affidavit in which he averred that he "inferred by negative implication" that Judge Hill-Kennedy threatened to impose sanctions on him if he appealed the order granting partial summary disposition. Judge Hill-Kennedy denied any suggestion that he would sanction Kaufman if the court's ruling was appealed. Judge Hill-Kennedy stated, in pertinent part, with regard to defendants' claim of impartiality:

> And I would note here that the argument in part was maybe about impartiality, but possibly that I would be upset if this case went to the Court of Appeals and my decision was overturned which, of course, happens periodically. Thank goodness there is a check on our behavior here so we get a good quality end product at the end of the day. So that I think, wherever that fits here, I think that's part of the argument that I'm trying to avoid having the Court of Appeals scrutinize my decisions, which happens a couple hundred times a year.

Judge Hill-Kennedy also stated, in pertinent part, with regard to defendants' claim of bias:

> I suppose you could try and fit within the Michigan Court Rule 2.003(C), Grounds for Disqualification, by saying I have an ulterior motive, I have an outside interest in not wanting my cases to be reviewed by the Court of Appeals, therefore I'm trying to force settlement to avoid appellate scrutiny. There's just no evidence on the record of this and I, of course, disavow having indicated in any fashion that I was looking to pressure somebody to avoid appellate review.

Plaintiff's counsel, who was also present at the in-chambers meeting, averred in his affidavit, as well as at the hearing on the motion for disqualification, that Judge Hill-Kennedy did not make the implied threats attributed to him by defendants. On de novo review, Judge Thompson also concluded that both plaintiff's attorney and Judge Hill-Kennedy denied Kaufman's claims involving the in-chambers meeting. Judge Thompson found no evidence of bias or prejudice. Judge Thompson also found that there was no evidence on which to disqualify Judge Hill-Kennedy on due process grounds or for an appearance of impropriety.

Under these circumstances, where defendants' motion came exceedingly late, where the factual support for the motion was based on Kaufman's "inference" regarding the trial court's comments during an in-chambers meeting, and where both the trial judge and plaintiff's attorney stated that Kaufman's allegations did not comport with what actually transpired during the meeting, defendants have failed to show that the trial court abused its discretion by denying the motion for disqualification.

Defendants also argue that Judge Hill-Kennedy's partial summary disposition ruling showed "willful or egregious disregard for clear, controlling authority" and, therefore, "demonstrates disqualifying bias." They argue that Canon 2.B requires the judge "to respect and observe the law" and that a judge "who refuses to adhere to that precept 'has failed to adhere to the appearance of impropriety standard set forth in Canon 2.' MCR 2.003(C)(1)(b)." However, disqualification on the basis of bias cannot be established merely because of rulings against a party, even if the rulings are erroneous. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Defendants' mere contention that a number of Judge Hill-Kennedy's findings were beyond the scope of what a "reasonable judge" would do does not sustain the heavy burden of showing that Judge Hill-Kennedy was biased. In a related argument, defendants claim reassignment to a new trial judge is necessary. Because there is no need for a remand in this case, we need not consider this issue.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica

-13-